UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| PATRICK BRADY, | No. 2:21-cv-00489 TLN AC |
|---|---|
| Plaintiff, | |
| v. | ORDER |
| SCOTT JONES, et al., | |
| Defendants. | |

Plaintiff, a pretrial detainee proceeding pro se, seeks relief pursuant to 42 U.S.C. § 1983 and has requested leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915. The undersigned found on screening that the initial complaint failed to state a viable claim for relief, and plaintiff was granted leave to amend. ECF No. 10. Plaintiff has now filed a First Amended Complaint. ECF No. 16.

I.     Application to Proceed In Forma Pauperis

Plaintiff has submitted a declaration that makes the showing required by 28 U.S.C. § 1915(a). ECF No. 18; see also ECF No. 2 at 3-6. Accordingly, the request to proceed in forma pauperis will be granted.

Plaintiff is required to pay the statutory filing fee of $350.00 for this action. 28 U.S.C. §§ 1914(a), 1915(b)(1). By this order, plaintiff will be assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). By separate order, the court has directed the appropriate agency to collect the initial partial filing fee from plaintiff's trust account

and forward it to the Clerk of the Court. Thereafter, plaintiff will be obligated for monthly payments of twenty percent of the preceding month's income credited to plaintiff's prison trust account. These payments will be forwarded by the appropriate agency to the Clerk of the Court each time the amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full. 28 U.S.C. § 1915(b)(2).

II. Statutory Screening of Prisoner Complaints

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are "frivolous, malicious, or fail[] to state a claim upon which relief may be granted," or that "seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

A claim "is [legally] frivolous where it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984). "[A] judge may dismiss . . . claims which are 'based on indisputably meritless legal theories' or whose 'factual contentions are clearly baseless.'" Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989) (quoting Neitzke, 490 U.S. at 327), superseded by statute on other grounds as stated in Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000). The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. Franklin, 745 F.2d at 1227-28 (citations omitted).

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). "Failure to state a claim under § 1915A incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)." Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted). In order to survive dismissal for failure to state a claim, a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the

speculative level." Twombly, 550 U.S. at 555 (citations omitted). "'[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.'" Id. (alteration in original) (quoting 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004)).

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Hosp. Bldg. Co. v. Trs. of the Rex Hosp., 425 U.S. 738, 740 (1976) (citation omitted), as well as construe the pleading in the light most favorable to the plaintiff and resolve all doubts in the plaintiff's favor, Jenkins v. McKeithen, 395 U.S. 411, 421 (1969) (citations omitted).

III. First Amended Complaint

Plaintiff is a federal pretrial detainee being held in the Sacramento County Jail, who challenges the conditions of his confinement at the jail. The undersigned takes judicial notice of the fact that plaintiff is charged in Case No. 2:19-cr-00107 KJM with participation in a racketeering conspiracy that involved murder and drug distribution.[1] It is a potentially capital prosecution. The government has alleged that plaintiff is an Aryan Brotherhood member who, while a state prison inmate, murdered another prisoner as part of the conspiracy. Plaintiff was transferred from the custody of the California Department of Corrections and Rehabilitation to the custody of the U.S. Marshal for purposes of the present federal prosecution. The USMS contracts with Sacramento County for the housing of federal pretrial detainees at the county jail.

The FAC presents four claims which allege in sum as follows. Claim One asserts that Sheriff Scott Jones, Jail Commander Brandon Luke, Lt. Shaun Hamptun, Sgt. Pfau and Sgt. Saika violated plaintiff's due process rights by placing him in the jail's Total Separation Unit (T-Sep),

---

[1] See Fed. R. Evid. 201(b). It is well established that a court may take judicial notice of its own records. See United States v. Author Servs., Inc., 804 F.2d 1520, 1523 (9th Cir. 1986).

3

also identified as pod 8W400, and denying his various grievances challenging that placement. In T-Sep plaintiff is single-celled and kept inside his cell for 22 hours a day. Defendants have justified this placement on grounds that plaintiff has been validated as a gang member (Aryan Brotherhood) and on grounds of his criminal history and unspecified past behavior. Defendants have explained that Aryan Brotherhood affiliated co-defendants in plaintiff's RICO conspiracy case have been separately housed in T-Sep in light of their histories, the charges against them, and their criminal sophistication. This basis for plaintiff's segregation is contrary to jail policy that says restricted housing is limited to "extraordinary circumstances" such as recent assaultive behavior. Plaintiff has had no disciplinary infractions at the jail. Also, defendants have relied on plaintiff's custodial history at CDCR when the policy specifies that placement in restrictive housing is to be based on recent conduct and not past behavior. Due process is further violated by the county policy of giving jail officials discretionary authority to override the official policy's limitations on T-Sep placement. ECF No. 16 at 2-3, 8-13.

Claim Two alleges that Sheriff Jones, Commander Luke and Lt. Hamptun have violated plaintiff's First Amendment right to confidential legal visits. Conversations in the 8West legal visiting booth(s) can be and are easily overheard by people outside the booth(s). This has had a "chilling effect" on plaintiff's ability to discuss the discovery and other case-related matters with his attorneys. ECF No. 16 at 13-16.

Claim Three alleges that Sheriff Jones, Lt. Hamptun and Sgt. Meeks have violated plaintiff's rights by video recording plaintiff's meetings with his legal team at the jail. Cameras were installed in a legal visiting booth that was being converted into a social visiting booth for high security inmates. These cameras were operational while the booth was still being used for confidential legal visits, and plaintiff's legal visits were video recorded on four occasions. Plaintiff has experienced a "chilling effect" on his ability to discuss his case and the development of a mitigation strategy with his lawyers. ECF No. 16 at 16-19.

Claim Four alleges that Sheriff Jones, Commander Luke, Lt. Fisher, Sgt. Villanueva and Sgt. Headly have demonstrated deliberate indifference to plaintiff's safety by placing him in a cell that is locked from the outside by a padlock, and by denying his grievances of this issue. The

4

locking mechanism means that plaintiff's cell door can only be opened manually, which creates a life-threatening danger in case of evacuation for fire or other such emergency. Moreover, plaintiff suffers from "certain lipid abnormalities that increase the potential for heart problems." In the event of a medical emergency, delayed response due to the locking mechanism could have fatal consequences. ECF No. 16 at 19-22.

IV. Failure to State a Claim

A. Legal Standards Governing Rights of Pretrial Detainees

The rights of pretrial detainees are grounded in the Due Process Clause. Bell v. Wolfish, 441 U.S. 520, 545 (1979); Pierce v. County of Orange, 526 F.3d 1190, 1205 (9th Cir. 2008). Detainees have a substantive due process right against restrictions that amount to punishment. Valdez v. Rosenbaum, 302 F.3d 1039, 1045 (9th Cir. 2002) (citing United States v. Salerno, 481 U.S. 739, 746 (1987)). "For a particular governmental action to constitute punishment, (1) that action must cause the detainee to suffer some harm or 'disability,' and (2) the purpose of the governmental action must be to punish the detainee." Demery v. Arpaio, 378 F.3d 1020, 1029 (9th Cir. 2004) (citing Bell, 441 U.S. at 538). "Unless there is evidence of intent to punish, then those conditions or restrictions that are reasonably related to legitimate penological objectives do not violate a pretrial detainee's right to be free from punishment." Hatter v. Dyer, 154 F. Supp. 3d 940, 945 (C.D. Cal. 2015) (citing Block v. Rutherford, 468 U.S. 576, 584 (1984)).

In the first step of this inquiry, "the harm or disability . . . must either significantly exceed, or be independent of, the inherent discomforts of confinement." Id. at 1030 (citing Bell, 441 U.S. at 537). To determine punitive intent, courts "first examine whether the restriction is based upon an express intent to inflict punishment." Valdez, 302 F.3d at 1045 (citing Salerno, 481 U.S. at 746). Courts "next consider whether punitive intent can be inferred from the nature of the restriction. This determination . . . will generally turn upon 'whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether [the restriction] appears excessive in relation to the alternative purpose assigned [to it].'" Id. (citing Bell, 441 U.S. at 539) (brackets in original).

As to any condition of confinement alleged to be unconstitutional, plaintiff must plead

facts that demonstrate both (1) harm to plaintiff and (2) an intent to punish plaintiff, rather than a legitimate penological rationale, motivating the challenged action or restriction. He has not done so in the complaint before the court. Conclusory allegations regarding intent are insufficient. See Iqbal, 556 U.S. at 678. At a minimum plaintiff must state facts which, accepted as true, support an inference of punitive effect and intent as to any particular condition he challenges.

B. Claim One: Placement in Total Separation Unit

The FAC clarifies defendants' asserted basis for plaintiff's placement in the jail's Total Separation Unit.[2] The reasons given by defendants—plaintiff's Aryan Brotherhood affiliation, his criminal history, the nature of the charges against him (which the court notes include murdering another inmate while in prison and directing drug distribution from prison), past adjustment to incarceration, and criminal sophistication—are plainly related to the legitimate penological goals of institutional safety and security. None of facts indicate that the purpose of plaintiff's placement is punitive rather than for the stated, legitimate reasons. Accordingly, the facts alleged do not state a claim for relief under the Fourteenth Amendment. See Block, 468 U.S. at 584 (no constitutional violation absent intent to punish).

The Ninth Circuit has held that pretrial detainees have "no constitutional right to a particular classification status." Hernandez v. Johnston, 833 F.2d 1316, 1318 (9th Cir. 1987). Jails may take measures to maintain institutional security and preserve internal order, even when such measures infringe on specific constitutional guarantees; such measures "must be evaluated in the light of the central objective of prison administration, safeguarding institutional security." Bell, 441 U.S. at 546-547; see also Salerno, 481 U.S. at 747 (there is no constitutional infringement if restrictions are "but an incident of some other legitimate government purpose.").

Even assuming that plaintiff's placement in the Total Separation Unit violates the jail's own policies, as plaintiff alleges, the violation of an institutional policy does not support a

---

[2] The Total Separation Unit "is reserved for inmates that present a high security risk, such as inmates accused of notorious crimes, inmates who have demonstrated an unwillingness to follow facility rules, inmates that have been violent with others, and inmates that may be targets of violence by other inmates. . . . Inmates in the Total Separation Unit are housed in a cell alone and separated from all other inmates." Harlan v. County of Sacramento, Case No. 2:16-cv-02400-JAM, ECF No. 21 at 2, 2018 U.S. Dist. LEXIS 53773 *1-2 (E.D. Cal. March 29, 2018).

constitutional claim. See Case v. Kitsap County Sheriff's Dep't, 249 F.3d 921, 930 (9th Cir. 2001) (quoting Gardner v. Howard, 109 F.3d 427, 430 (8th Cir. 1997) ("[T]here is no § 1983 liability for violating prison policy. [Plaintiff] must prove that [the official] violated his constitutional right . . . ."). Neither is the Fourteenth Amendment categorically offended by the vesting of discretion in jail commanders or other officers to determine that a particular detainee warrants restrictive placement. The constitutional question in any given case is whether the placement at issue was for a punitive purpose rather than a legitimate penological purpose. See Demery, 378 F.3d at 1029. Because the face of the FAC demonstrates the existence of a patently rational penological purpose for plaintiff's housing status, and no facts demonstrate punitive intent on the part of any defendant, plaintiff cannot state a constitutional claim.

### C. Claims Two and Three: Denial of and Recording of Confidential Legal Visits

Plaintiff alleges that he is deprived of the ability to meet and confer with counsel in a confidential setting, in violation of his First Amendment rights (Claim Two) and that his legal visits have been illegally video recorded (Claim Three). As the undersigned noted in screening the original complaint, infringements on the attorney-client relationship in violation of the Sixth Amendment's guarantee of effective legal assistance do not support civil liability under § 1983. ECF No. 10 at 8 & n.4. However, the constitutional right of access to courts includes legal visitation and confidential communications with counsel. Ching v. Lewis, 895 F.2d 608, 610 (9th Cir. 1990); Hydrick v. Hunter, 500 F.3d 978, 999 (9th Cir. 2007) (overruled on other grounds). This right is not absolute; like other rights of pretrial detainees, visits may be denied or limited for legitimate reasons. See Block, 468 U.S. at 585-89; Salerno, 481 U.S. at 747. To state a denial of access claim, the plaintiff must state facts showing that he suffered an actual injury—that the defendants' actions "hindered his efforts to pursue a legal claim." Lewis v. Casey, 518 U.S. 343, 351 (1996).

Accepting the truth of all allegations, plaintiff has demonstrated the violation of attorney-client confidentiality but has not demonstrated any resulting injury to plaintiff's defense in the criminal case. That is the kind of "actual injury" that Lewis v. Casey contemplates; a "chilling effect" on attorney-client conversations is not enough. See id. at 354-355 ("the actual injury

requirement is not satisfied by just any type of frustrated legal claim[,]" but requires a showing that plaintiff actually forfeited the opportunity to attack his sentence or challenge his conditions of confinement). Plaintiff cannot demonstrate any concrete prejudice to his defense against the criminal charges he faces, because the criminal case is far from concluded. Although the FAC articulates a legitimate grievance, it does not identify a completed constitutional injury that can be redressed under § 1983.

In any event, attorney access and attorney-client communications—unlike conditions of confinement per se—are matters which come squarely within the scope of the underlying criminal case and are capable of being addressed in that context. Indeed, Judge Mueller is currently conducting proceedings to address the defendants' complaints about legal visiting and attorney-client communications. See Case No. 2:19-cr-00107, ECF Nos. 796 et seq.

### D. Claim Four: Deliberate Indifference to Safety

In the pretrial context, deliberate indifference to an inmate's medical needs or physical safety is governed by a purely objective standard, without the subjective intent requirements that apply under the Eighth Amendment. Castro v. County of Los Angeles, 833 F.3d 1060, 1070 (9th Cir. 2016) (holding that the objective excessive force standard of Kingsley v. Hendrickson, 576 U.S. 389 (2015), applies to failure to protect claims in the pretrial detention context), cert. denied, 137 S. Ct. 831 (2017); Gordon v. County of Orange, 888 F.3d 1118, 1125 (9th Cir. 2018) (same standard applies to medical care claims in pretrial detention context). To state a claim that his Fourteenth Amendment rights are violated by an unsafe condition, plaintiff must plead facts establishing that (1) defendant(s) made an intentional decision with respect to the conditions of plaintiff's confinement; (2) those conditions exposed plaintiff to a "substantial risk of serious harm"; (3) defendant(s) did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved; and (4) by not taking those measures, defendant(s) caused plaintiff's injuries. Castro, 833 F.3d at 1071.

The allegations of the FAC do not demonstrate that plaintiff has been exposed, or is being exposed, to a substantial risk of serious harm. The possibility that there might be a fire at the jail

requiring the mass evacuations of inmates, or that plaintiff might experience a life-threatening medical emergency in his cell, are both entirely speculative. Even if such a crisis were to occur, the possibility that the padlock on plaintiff's door would result in a delay in assistance remains speculative, and the possibility that any such delay would be lengthy enough to pose a significantly risk to plaintiff's safety is even more so. Plaintiff has identified a theoretically possible risk of harm, not a substantial one. Accordingly, the circumstances plaintiff complains of do not implicate his constitutional rights.

### E. Further Leave to Amend Is Not Appropriate

For the reasons explained above, the FAC does not state a claim for relief. Leave to amend need not be granted when amendment would be futile. Hartmann v. CDCR, 707 F.3d 1114, 1130 (9th Cir. 2013). Here, the futility of amendment is apparent. Plaintiff's complaints about his restrictive housing placement and the external padlock on his door cannot be saved by additional facts. Indeed, plaintiff has already had the opportunity to amend both claims, and his amendments only highlight the legal insufficiency of his claims. As to Claim One, the FAC makes it clear that defendants have an articulated, rational, and non-punitive penological justification for plaintiff's housing. Even if jail policies have been violated, there is no constitutional violation and thus no viable § 1983 claim. As to Claim Four, plaintiff's clarification of the danger he allegedly faces makes its speculative nature indisputable.

Claims Two and Three present serious issues regarding intrusion on the attorney-client relationship, but those facts do not support an access to courts claim absent a completed injury in the form of prejudice to plaintiff's defense in the criminal case. Such a claim is not ripe, and amendment could not change that. Moreover, these matters are being addressed in the criminal case, which is the proper forum for their resolution. For all these reasons, the undersigned recommends that the FAC be dismissed on screening without further leave to amend.

### CONCLUSION

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff's request for leave to proceed in forma pauperis (ECF No. 18) is granted.

2. Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action. Plaintiff

is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). All fees shall be collected and paid in accordance with this court's order to the Sheriff of Sacramento County, ECF No. 11. See ECF No. 15 (order vacating previous grant of IFP status, but directing that the fee order stand pending consideration of a completed IFP application).

It is FURTHER RECOMMENDED that:

1. The First Amended Complaint be DISMISSED pursuant to 28 U.S.C. § 1915A(a), without leave to amend, for failure to state a claim upon which relief may be granted; and

2. This case be CLOSED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, plaintiff may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: June 24, 2021

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE